UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


DONNA BOBMAN,

      Plaintiff,

v.                                                                Case No. 8:19-cv-1465-T-CPT

ANDREW M. SAUL,
Commissioner of Social Security,

      Defendant.
_____/


**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of her claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).  For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in 1954, has a high school education and two years of college, and has past relevant work experience as a receptionist, administrative clerk, sales attendant, and bowling alley manager.  (R. 23, 250).  In November 2015, the Plaintiff applied for DIB and SSI alleging disability as of November 17, 2015, due to depression, osteoporosis, high cholesterol, and a lower back condition.  (R. 227-36, 249).  The Social Security Administration (SSA) denied her applications both initially and on reconsideration.  (R. 107-08, 135-36).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter on March 20, 2018.  (R. 37-84).  The Plaintiff was represented by counsel at that hearing and testified on her own behalf.  A vocational expert (VE) also testified.

In a decision dated July 23, 2018, the ALJ found that the Plaintiff: (1) met the insured status requirements through June 30, 2018, and had not engaged in substantial gainful activity since her alleged onset date of November 17, 2015; (2) had the severe impairments of osteoarthritis and a spine disorder; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments; (4) had the residual functional capacity (RFC) to conduct light work with a sit/stand option[1] and with a number of postural and environmental limitations; and (5) was capable of engaging in her past relevant work as both a receptionist and an administrative clerk, and was also able to make a successful adjustment to work that exists in significant numbers in the national economy.  (R. 12-25).  In light of these findings, the ALJ concluded that the Plaintiff was not disabled.  (R. 25).

The Appeals Council denied the Plaintiff's request for review.  (R. 1-8).  Accordingly, the ALJ's decision became the final decision of the Commissioner.

---

[1] The sit/stand option required that the Plaintiff be permitted to alternate sitting and standing every thirty minutes.  (R. 19).

2

II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).[2]  A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process."  *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (citing 20 C.F.R. § 404.1520(a)(4)); *see also* 20 C.F.R. § 416.920(a)(4).[3]  Under this process, an ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work experience.  *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4),

---

[2] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority.  11th Cir. R. 36-2.

416.920(a)(4)). While the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove that she cannot perform the work identified by the Commissioner. *Id.* In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether his decision is supported by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations and quotations omitted). In evaluating whether substantial evidence supports the Commissioner's decision, the Court may not decide the facts anew, make credibility determinations, or re-weigh the evidence. *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 860 (11th Cir. 2019) (per curiam) (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). "[W]hile the court reviews the Commissioner's decision with deference to [his] factual findings, no such deference is given to [his] legal

conclusions." *Keel-Desensi v. Berryhill*, 2019 WL 1417326, at *2 (M.D. Fla. Mar. 29, 2019) (citations omitted).

III.

The Plaintiff's appeal is directed at the ALJ's assessment of her mental impairments and centers around a number of arguments, including the following: (a) the ALJ erred in failing to weigh the Plaintiff's mental health treatment records from Suncoast Community Health Center (Suncoast); (b) the ALJ erred in according great weight to the medical opinions of two state agency non-examining psychological consultants, Heather Bradley, Ph.D., and James Mendelson, Ph.D.; and (c) the ALJ erred in affording little weight to the opinion of an examining psychologist, Dr. Steven Wu. (Doc. 17 at 12-18). In addition to these contentions, the Plaintiff challenges the ALJ's finding at step two of the sequential evaluation process that the Plaintiff's mental limitations were not severe. *Id.* The Commissioner counters that the ALJ applied the correct legal standards and that her decision is supported by substantial evidence. *Id.* at 18-32. After careful consideration of the record and the parties' submissions, the Court finds no reversible error.

A.

The Court begins with an overview of the law governing an ALJ's obligations with respect to medical opinions, as these legal principles bear on the Plaintiff's first three arguments. In reviewing an individual's disability claim, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per

5

curiam) (citing 20 C.F.R. § 404.1527(b)); *see also* 20 C.F.R. § 416.927(b)).[4]  "'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite [her] impairment(s), and [the claimant's] physical or mental restrictions.'"  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).

An ALJ must state with particularity the weight given to a medical opinion and the reasons therefor.  *Id.* at 1179.  In rendering this determination, an ALJ must assess: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of the doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's opinion is with the record as a whole; and (5) the doctor's area of specialization.  20 C.F.R. §§ 404.1527(c), 416.927(c).  While an ALJ is required to consider each of these factors, it is not necessary that she explicitly address them in her decision.  *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam).

The Regulations set forth three tiers of medical opinions: (1) treating doctors; (2) non-treating, examining doctors; and (3) non-treating, non-examining doctors. *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (citing

---

[4] Although these regulations have been amended effective March 27, 2017, the new regulations only apply to applications filed on or after that date.  *See* 20 C.F.R. §§ 404.1520c, 416.920c. Because the Plaintiff's applications were submitted in November 2016, the older versions of the regulations are controlling here.

20 C.F.R. §§ 404.1527(a)(2), (c)(1)-(2), 416.927(c)(1)-(2)).  Treating doctors's opinions are accorded the most deference because there is a greater likelihood that these healthcare providers will "be able to give a more complete picture of the [claimant's] health history." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019) (per curiam) (citing 20 C.F.R. § 404.1527(c)(2)).  As a result, the ALJ must give the opinion of a treating doctor substantial or considerable weight unless "good cause" is shown to the contrary.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam).

The opinion of a one-time examining doctor does not merit such deference. *Crawford*, 363 F.3d at 1160 (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)).  And, a non-examining doctor's opinion is generally entitled to the least deference.  *See Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 832 (11th Cir. 2017) (per curiam).  In the end, irrespective of the nature of their relationship with a claimant, an ALJ "is free to reject the opinion of *any* [doctor] when the evidence supports a contrary conclusion."  *Id*. (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)); *accord Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam) ("[T]he ALJ may reject any medical opinion if the evidence supports a contrary finding.").

Against this backdrop, the Court turns to the categories of medical evidence the Plaintiff claims the ALJ errantly evaluated.

### 1. Suncoast Records

The Plaintiff's records from Suncoast evidence that she began seeing Licensed Mental Health Counselor Lavasaous Candis in late September 2016 and continued to visit Candis approximately once a month through April 2017. (R. 438-53); *see also* (Doc. 17 at 5-9). Candis's notes regarding the Plaintiff generally reflect a diagnosis of major depressive disorder, single episode, moderate, as well as an unspecified anxiety disorder. (R. 438-53). They also reveal that the Plaintiff claimed she struggled with feelings of depression, stress, and anxiety about herself and her lack of a job. *Id.* While Candis on occasion characterized the Plaintiff's mood as depressed, she often reported the Plaintiff as having a euthymic (i.e., normal or neutral) mood and as being "stable." (R. 438-53).

After citing and discussing Candis's notes and diagnoses, the ALJ observed that the Plaintiff's mental health counseling records did not reveal any "significant worsening of her symptoms." (R. 17). Consistent with this conclusion, the ALJ stated that the Plaintiff was described on her last visit with Candis as stable, with clear and coherent thought, no abnormal thought content, a euthymic mood, and an appropriate affect. *Id.*

In her memorandum, the Plaintiff summarily asserts that the ALJ should have expressly assigned the weight she gave to the evidence of Candis's treatment of the Plaintiff. (Doc. 17 at 18). This argument fails.

To begin, the Plaintiff does not identify any specific "opinion" contained within Candis's records that the ALJ was obligated to assess. By the Court's review, Candis's

treatment notes do not offer a judgment regarding the Plaintiff's limitations stemming from her mental condition or an evaluation of what the Plaintiff was capable of doing despite her impairments.

Even if Candis had offered any such "opinions," the ALJ was not required to defer to them under the applicable regulatory framework. *Farnsworth v. Soc. Sec. Admin.*, 636 F. App'x 776, 783084 (11th Cir. 2016) (per curiam) (citing 20 C.F.R. §§ 404.1513(a), 416.913(a)). The Regulations governing an ALJ's evaluation of opinion evidence offered by medical sources draw a distinction between "acceptable medical sources" and "other sources." Social Security Ruling (SSR) 06-03p, 2006 WL 2329939, at *1-4 (S.S.A. Aug. 9, 2006) (explaining how the SSA assesses opinions from different types of evidentiary sources);[5] 20 C.F.R. §§ 404.1513, 416.913. Acceptable medical sources include licensed physicians and licensed or certified psychologists, while "other sources" include physician assistants, nurse practitioners, and—of relevance here—licensed mental health counselors like Candis. SSR 06-03p at *1-2; 20 C.F.R. §§ 404.1513, 416.913; *Farnsworth*, 636 F. App'x at 784.

"[O]nly evidence from 'acceptable medical sources' can establish the existence of a medically determinable impairment, and only 'acceptable medical sources' can give medical opinions or be considered treating sources, whose medical opinions may

---

[5] SSRs "are agency rulings published under the Commissioner's authority and are binding on all components of the Administration." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (per curiam) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990)). While courts do not treat SSRs as controlling, they generally afford them deference. *Id.* (citation omitted).

be entitled to controlling weight." *Anteau v. Comm'r of Soc. Sec.,* 708 F. App'x 611, 613 (11th Cir. 2017) (per curiam) (citing SSR 06-03p, 2006 WL 2329939, at *2); *see also Graham v. Berryhill*, 2018 WL 4520342, at *4 (M.D. Fla. Sept. 21, 2018) (citing SSR 06-03p, 2006 WL 2329939, at *1).

Unlike "acceptable medical sources," the opinions of "other sources" (such as Candis) are "not medical opinions . . . entitled to any special significance or consideration," *Lange v. Comm'r of Soc. Sec.*, 2019 WL 643714, at *4 (M.D. Fla. Feb. 15, 2019) (citations omitted), and "cannot establish the existence of a medically determinable impairment," *Anteau*, 708 F. App'x at 613 (citation omitted).  As such, "[t]he ALJ 'may' consider evidence from other sources to show the severity of an individual's impairments and how those impairments affect the individual's ability to function, but [she] is not required to do so." *Figuera v. Comm'r of Soc. Sec.*, ____ F. App'x ____, 2020 WL 4185793, at *2 (11th Cir. July 21, 2020) (per curiam) (citing SSR 06-03p).

In this case, to the extent Candis offered any "opinion," the ALJ was not mandated to weigh that opinion or afford it any particular deference.  Nonetheless, it is clear to the Court that the ALJ considered the Plaintiff's treatment notes from Suncoast and provided reasons why those records supported the ALJ's mental RFC assessment.  *See* (R. 17).[6]

---

[6] The Court notes that the ALJ's mental RFC assessment was performed under the banner of her step-two finding. (R. 17-18).  The ALJ's decision, however, when fairly read, reflects that this analysis was intended to comprise the more detailed mental RFC assessment at step four. *See id.*

Moreover, the Plaintiff does not point to anything in the Suncoast treatment notes that supports a greater mental limitation than that found by the ALJ. While those records indicate that the Plaintiff was diagnosed with certain mental health disorders, the fact that a claimant has been diagnosed with a condition does not necessarily equate to a work-related limitation that an ALJ must include in her RFC. *Moore*, 405 F.3d at 1213 n.6 (stating that "the mere existence of . . . impairments does not reveal the extent to which they limit [a plaintiff's] ability to work" and citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) for the proposition that the severity of an impairment "must be measured in terms of its effect upon [a claimant's] ability to work"); *Sheerin v. Saul*, 2020 WL 1430696, at *7 (M.D. Fla. Mar. 24, 2020) (same). Rather, the Plaintiff must "show the effect of the [claimed] impairment on her ability to work." *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (per curiam); *see also Carter v. Comm'r of Soc. Sec.*, 411 F. App'x 295, 299 (11th Cir. 2011) (per curiam). Here, the Plaintiff does not demonstrate that the Suncoast records reflect an opinion by Candis that the Plaintiff required any work-related restrictions. 20 C.F.R. § 404.1512(a); *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 859 (11th Cir. 2013) (per curiam) (noting claimant failed to show what additional limitations her condition caused beyond limitations manifested by her other severe impairments).

Finally, to the extent the ALJ erred at all in her consideration of Candis's observations and diagnoses, any such error was harmless. This is because Candis's assessments of the Plaintiff are not inconsistent with the ALJ's ultimate mental RFC finding. *See Cooper v. Astrue*, 373 F. App'x 961, 962 (11th Cir. 2010) (per curiam) (citing

*Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (stating that an error is harmless when it does not prejudice a claimant)); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (per curiam) (finding harmless error where the ALJ failed to explicitly state what weight he afforded to a number of physicians's medical opinions where none of those opinions directly contradicted the ALJ's findings).

2.   State Agency Psychologists Bradley and Mendelson

The Court is likewise unpersuaded by the Plaintiff's claim that the ALJ gave too much deference to the opinions of the state agency consultants, Drs. Bradley and Mendelson.   (Doc.17 at 12-13).   State agency medical consultants are considered experts in the Social Security disability evaluation process, and their findings of fact regarding the nature and severity of a claimant's impairments therefore "must be treated as expert opinion evidence of non-examining sources," SSR 96-6p, 1996 WL 374180, at *1 (S.S.A. July 2, 1996).   When considering the weight to accord state agency consultants's opinions, SSR 96-6p provides:

> [T]he opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the [ALJ] and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. . . .

1996 WL 374180, at *2.

In this case, Drs. Bradley and Mendelson evaluated the Plaintiff's claims at the initial and reconsideration levels in January and April 2016, respectively. (R. 89-90, 117). Both concluded that the Plaintiff had no severe mental impairments and that "there [wa]s no indication that [the Plaintiff's] depression is limiting her ability to work." *Id.* In determining the Plaintiff's mental RFC, the ALJ gave "great weight" to these assessments, finding they were "consistent with the fact that the claimant d[id] not receive ongoing counseling" and was not on "any psychotropic medication for her mental illness." (R. 18).[7]

The Plaintiff fails to demonstrate any error in this regard. Indeed, she makes no meaningful argument that the ALJ's crediting of Drs. Bradley and Mendelson's opinions was flawed. While noting that the two physicians's assessments are identical and employ language used by the individual who was responsible for making the initial disability determination,[8] the Plaintiff does not cite any authority that the consultants's evaluations should be disregarded simply because of that fact.

---

[7] There is some discrepancy in the record pertaining to the Plaintiff's medications. For example, the Plaintiff testified at the ALJ hearing that she was taking the anti-depressant, Lexapro. (R. 53). Roughly two months prior to that date, however, she reported to the SSA that she was not taking any antidepressants. (R. 349); *see also* (R. 413-14, 416, 418, 424, 427, 431) (notes from Plaintiff's primary doctor indicating she stopped and started prescriptions for various medications, including Lexapro, Celexa, and Escitalopram Oxalate). Because the Plaintiff does not dispute the ALJ's finding that she was not taking any psychotropic medication and because it is the province of the ALJ to resolve any inconsistencies in the record, the Court does not address this matter further.

[8] This individual is known as the "single decision maker." *See Siverio v. Comm'r of Soc. Sec.*, 461 F. App'x 869, 871 (11th Cir. 2012) (per curiam) (noting that "a single decision maker" renders "the initial disability determination after 'appropriate consultation with a medical or

The Plaintiff's suggestion that the ALJ should not have shown such deference to Drs. Bradley and Mendelson's opinions because they did not review the Plaintiff's subsequent treatment notes from Suncoast or Dr. Wu's assessment[9] is similarly unavailing. The ALJ—who was responsible for making the ultimate decision—had the entire record before her. As a result, she was well positioned to assess whether Drs. Bradley and Mendelson's evaluations were bolstered by, and consistent with, the record evidence and thus whether to afford those opinions great weight. *See Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (per curiam) (finding that an ALJ did not accord undue weight to a non-examining doctor where the doctor cited several portions of the record in support of her conclusions, and the ALJ—who makes the ultimate decision—had access to the full record, including the claimant's testimony). Because the ALJ engaged in such an analysis here, she was free to grant significant weight to Drs. Bradley and Mendelson's assessments given her clearly articulated finding that the record supported such a determination. *See* 20 C.F.R. § 404.1527(e)(2)(i); SSR 96-6p, 1996 WL 374180; *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 902 (11th Cir. 2012) (per curiam) (finding the ALJ clearly articulated reasons for giving significant weight to non-examining physician's opinions by stating that those opinions were consistent with the objective medical evidence); *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 874 (11th Cir. 2011) (per curiam) (noting that

---

psychological consultant.'") (quoting 20 C.F.R. § 404.906(b)(2). Such individuals do not provide medical opinions. *Id.*

[9] Dr. Wu's opinions are discussed *infra.*

14

the ALJ did not err in relying on the reports of non-examining physicians where the doctors's opinions did not otherwise contradict the other evidence of record).

### 3.   Dr. Wu

The Plaintiff's claim that the ALJ erred in discounting Dr. Wu's opinion also fails.  Dr. Wu performed a post-hearing consultative examination of the Plaintiff in April 2018 at the request of the Office of Disability Determinations.  (R. 475-82).  Dr. Wu diagnosed the Plaintiff with major depressive disorder, recurrent, severe and generalized anxiety disorder, but stated that these conditions were treatable with cognitive behavioral therapy and "should not be a major impairing factor in her case." (R. 478-79).  In his functional assessment, Dr. Wu found that the Plaintiff had no limitations with respect to understanding, remembering, and carrying out instructions; no limitation in her ability to interact with coworkers and supervisors; a moderate limitation in her ability to interact with the public; and an extreme limitation in her ability to respond appropriately to usual work situations and to changes in a routine work setting.  (R. 480-81).  Dr. Wu concluded that the Plaintiff had an overall moderate disability.  (R. 481); *see generally* (Doc. 17 at 9-12) (providing summary of Dr. Wu's report and accompanying medical source statement).

The ALJ cited Dr. Wu's opinions in her step two analysis and in her subsequent discussion of the Plaintiff's mental RFC.  (R. 16-18).  With respect to the latter, the ALJ provided a detailed summary of Dr. Wu's report and elected to give little weight to his opinions—including that the Plaintiff had certain limitations and an overall moderate disability—because "Dr. Wu only evaluated the claimant once and his

15

assessment [was] inconsistent with the claimant's treatment record and his own evaluation."  (R. 18).  She further reasoned that discounting Dr. Wu's opinion also accorded with the record evidence that the Plaintiff "only receive[d] sparse counseling for her mental health impairment" and was "not on any medications for her alleged symptoms."  *Id.*

In her memorandum, the Plaintiff does not show that the above-stated reasons provide an insufficient basis for the ALJ's determination not to credit Dr. Wu's opinion.  Instead, she presents a smattering of underdeveloped theories about why the ALJ's assessment was unfounded.  None of these theories survive scrutiny.

It bears repeating at the outset that, as a one-time examiner, Dr. Wu's opinions were not entitled to special deference.  *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (per curiam) ("The ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician."); *McSwain,* 814 F.2d at 619 (finding that one-time examinations generally are not entitled to deference).

Furthermore, contrary to the Plaintiff's suggestion, in discounting Dr. Wu's opinion, the ALJ did not rely—solely or explicitly—on the assessments of the non-examining physicians, Drs. Bradley and Mendelson.  Rather, the ALJ's decision contains a lengthy recitation and consideration of the evidence regarding the Plaintiff's mental condition, including Candis's notes from Suncoast, the Plaintiff's self-reported activities, her scant mental health treatment and lack of medications, and the

16

inconsistencies between Dr. Wu's evaluation and his opinions that the Plaintiff had more extreme limitations.  (R. 17-18).

The Plaintiff's challenge to the ALJ's reliance on the record evidence that she engaged in limited mental health treatment and did not take any medications for her alleged symptoms is even more unpersuasive.  (Doc. 17 at 17).  The Plaintiff offers no legal argument or explanation in support of this contention, and instead simply cites the case of *Burroughs v. Massanari*, 156 F. Supp. 2d 1350 (N.D. Ga. 2001).  Putting aside the bare-bones nature of the Plaintiff's challenge, *Burroughs* is readily distinguishable.  In that case, the court found that the plaintiff's lack of mental health treatment was "not surprising or indicative of an absence of significant illness in light of [the consulting psychologist's] finding that [the] plaintiff has poor insight into her mental condition," and the fact that her "failure to obtain additional treatment could also be due to her obviously low economic status."  *Burroughs*, 156 F. Supp. 2d at 1364).

Here, however, there is no indication in the record that the Plaintiff lacked insight into her mental condition or that she was financially unable to receive treatment.  To the contrary, both Dr. Wu and Candis reported that the Plaintiff was aware of her mental health issues and had normal and coherent thought content, good judgment, and no perceptual disturbances. (R. 438-53, 477).  In addition, while the Plaintiff testified that she stopped seeing her counselor at one point, she did so not for pecuniary reasons but because she was waiting for an office to open closer to her house. (R. 53).  As for the ALJ's finding that the Plaintiff was not taking psychotropic

medication, the Plaintiff fails to show that this finding is not substantially supported. *See* n.7, *supra*.

The Plaintiff's bare assertion that the ALJ improperly inserted her own judgment for that of Dr. Wu (Doc. 17 at 16) fares no better.  It is well established that an ALJ may not arbitrarily substitute her own opinion for that of a medical professional.  *See Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982) (per curiam); *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992) (Johnson, J., concurring specially) ("[The ALJ] may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.").  Such a scenario may occur when an ALJ "plays doctor" and takes it upon herself to analyze medical evidence beyond her ken, rather than confine herself to her proper role as "an adjudicator responsible for assessing [the claimant's] RFC" and for weighing the medical opinions.  *See Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014) (per curiam).

In her brief, the Plaintiff merely cites these legal principles but does not identify any specific finding that demonstrates the ALJ substituted her own judgment for that of Dr. Wu.  By the Court's reading of the ALJ's decision, the ALJ simply performed her duty of assessing the evidence of record and resolving the discrepancies she discerned.  *See* 20 C.F.R. §§ 404.1520b, 404.1527, 404.1545, 404.1546(c).  In short, there is no indication that the ALJ "played doctor" in this case.

The Plaintiff's speculation that the ALJ concocted inconsistencies that did not exist because she did not like Dr. Wu's opinion (Doc. 17 at 16) fails as well.  While perhaps not as "well-illuminated" as the Plaintiff might have liked, *id.*, the Court is

18

satisfied that the ALJ sufficiently articulated the discrepancies upon which she predicated her decision not to credit Dr. Wu's opinions.   The ALJ accurately recounted, for example, Dr. Wu's evaluation that resulted in mostly normal objective findings, and his statement that the Plaintiff's depression and anxiety were "treatable" and "should not be a major impairing factor in her case."  (R. 18, 475-78).  When contrasted with Dr. Wu's accompanying medical source statement that the Plaintiff had no limitations in multiple areas, a moderate limitation in one, and an extreme limitation in another, and that she had an overall moderate disability, the Court cannot agree with the Plaintiff that the ALJ was incorrect in finding Dr. Wu's opinion to be inconsistent with his own evaluation.

Finally, to the extent that the Plaintiff argues that the ALJ should not have relied on the Plaintiff's activities of daily living (e.g., cooking, driving, shopping, getting her grandchildren off to school, and taking care of herself and her pet) in rejecting Dr. Wu's opinion, her argument is misplaced.  (Doc. 17 at 14).[10]  Several of these activities were simply noted by the ALJ as part of her summary of Dr. Wu's report.  (R. 17).  The Court fails to see how such a summary leads to the conclusion that the ALJ's assessment of Dr. Wu's opinion is in error.

---

[10] The Plaintiff's argument on this front is somewhat difficult to follow.  While she claims that her daily living activities are not particularly relevant to a determination concerning depression, *id.*, she then cites a string of decisions touching on a range of issues (including whether participation in daily activities should be dispositive of disability or how they might be used to discredit a claimant's subjective allegations), with no explanation or tether to the specific facts of this action, *id.* at 14-15.  Because the Plaintiff's possible arguments stemming from this case authority are undeveloped, the Court declines to address every conceivable theory that the Plaintiff might have to challenge the ALJ's decision.

B.

As noted above, the Plaintiff additionally posits an overarching argument that the ALJ erred at step two in finding that the Plaintiff's mental impairments were non-severe.  This argument does not survive scrutiny.

At step two of the sequential evaluation process, the ALJ must engage in the "threshold inquiry" as to whether the claimant has a medically determinable impairment (or combination of impairments) that is severe.  *McCormick v. Soc. Sec. Admin., Comm'r*, 619 F. App'x 855, 857 (11th Cir. 2015) (per curiam) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4).  The severity of an impairment is "measured in terms of its effect upon [the] ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."  *McCruter*, 791 F.2d at 1547.  As a result, an impairment is considered severe only if it significantly limits a claimant's physical or mental abilities to engage in basic work activities.  20 C.F.R. §§ 404.1520, 404.1521(a), 416.920, 416.921(a); *see also Phillips*, 357 F.3d at 1237.  A non-severe impairment, on the other hand, is one that does not result in such a limitation.  20 C.F.R. §§ 404.1522, 416.922.

When a claimant presents a "colorable" claim of a mental impairment, the ALJ must apply the Psychiatric Review Technique (PRT) mandated by the Regulations.  *Moore*, 405 F.3d at 1213-14; 20 C.F.R. §§ 404.1520a, 416.920a.  This technique requires an assessment regarding how the claimant's mental impairments affect four broad functional areas (known as the Paragraph B criteria): (1) understanding,

20

remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.[11]  20 C.F.R. §§ 404.1520a(c)(3); 416.920a(c)(3).  If, after applying the PRT, the ALJ rates the functional restriction caused by the claimant's mental impairment to be "none" or "mild," then the ALJ will generally conclude that the impairment is not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities."  *Id.* at §§ 404.1520a(d)(1). 416.920a(d)(1).  The Regulations also mandate that the ALJ provide a specific explanation for her opinion, including the degree of limitation found in the functional areas listed above.  *Id.* at §§ 404.1520a(c)(4), (e)(4); 416.920a(c)(4), (e)(4).  The ALJ must then incorporate the results of the PRT into her findings and conclusions. *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013) (per curiam) (citing *Moore*, 405 F.3d at 1213-14).

In this case, the ALJ determined at step two that the Plaintiff had the medically determinable impairment of depression.  (R. 15).  The ALJ then considered the Paragraph B criteria and decided that this impairment caused the Plaintiff mild limitations in all four functional areas, and that the Plaintiff's depression was therefore not severe.  (R. 15-17).  In arriving at this conclusion, the ALJ properly incorporated pertinent findings and conclusions based on the application of the PRT,

---

[11] Prior to January 16, 2017, these four functional areas consisted of: "(1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation."  20 C.F.R., Part 404, Subpart P, Appendix 1 (2016).  As such, certain evidence refers to these criteria instead.

including the degree of limitation for each of the four functional areas. *Moore*, 405 F.3d at 1213-14; 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4). In doing so, the ALJ discussed the Plaintiff's function reports and questionnaires submitted to the SSA (Exhs. 3E, 4E, 8E), a third-party function reported supplied by the Plaintiff's daughter (Exh. 7E), the Plaintiff's hearing testimony, medical records from Florida Hospital, her neurosurgeon Steven Tresser, M.D., and family doctor Brian M. Schaub, D.O. (Exhs. 1F, 4F), and the consultative examination report from Dr. Wu (Exh. 10F). (R. 15-17).

The ALJ went on to acknowledge that the PRT assessment is not the same as a mental RFC evaluation at steps four and five (which, she correctly noted, requires a "more detailed assessment" of the functional import of a claimant's mental impairments), and stated that she had incorporated the mental function analysis into her RFC analysis. (R. 17). While still under the heading of step two, the ALJ then conducted her mental RFC assessment, where she discussed the mental health counseling notes from Suncoast, Dr. Wu's opinion, and the opinions of the state agency psychological consultants, Drs. Bradley and Mendelson. (R. 17-18). In her subsequent, more general RFC discussion, the ALJ made clear that she considered the Plaintiff's symptoms and the opinion evidence in accordance with the applicable regulatory standards, and reiterated that the Plaintiff was not taking any medications for her conditions and had simply attended counseling. (R. 19). By the Court's consideration, the ALJ's determinations in both her step two and step four analyses are supported by substantial evidence, and, as more fully set forth above, the Plaintiff

fails to show any error in the weight the ALJ afforded to the medical evidence or in the ALJ's overall mental RFC assessment.

IV.

For the foregoing reasons, it is hereby ORDERED:

1.      The Commissioner's decision is affirmed.

2.      The Clerk of Court is directed to enter Judgment in the Defendant's favor and to close the case.

DONE and ORDERED in Tampa, Florida, this 16th day of September 2020.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record

23